# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**

Filed: October 6, 2020

| | | |
|---|---|---|
| E.A.C., | * | UNPUBLISHED |
| Petitioner, | * | No. 18-819V |
| v. | * | Special Master Nora Beth Dorsey |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | * | Finding of Fact; Influenza ("Flu") Vaccine; Chronic Inflammatory Demyelinating Polyneuropathy ("CIDP"). |
| Respondent. | * | |

Nancy Meyers, Turning Point Litigation, Greensboro, NC, for petitioner.
Zoe Wade, U.S. Department of Justice, Washington, DC, for respondent.

## RULING ON FACTS[1]

On June 11, 2018, E.A.C ("petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program ("Vaccine Act" or "the Program"), 42 U.S.C. § 300aa-10 et seq. (2012).[2] Petitioner alleges that he suffered chronic inflammatory demyelinating polyneuropathy ("CIPD") as the result of an influenza ("flu") vaccination he received on October 2, 2015. Petition at Preamble (ECF No. 1).

---

[1] The undersigned intends to post this Ruling on the United States Court of Federal Claims' website. **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access. Because this unpublished Ruling contains a reasoned explanation for the action in this case, undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-10 to -34 (2012). All citations in this Ruling to individual sections of the Vaccine Act are to 42 U.S.C. § 300aa.

The parties requested a ruling on onset of CIDP, as to when petitioner first experienced upper extremity symptoms, specifically manually dexterity and hand weakness. See Order dated June 4, 2020 (ECF No. 38); Petitioner's Reply to Respondent's Brief ("Pet. Reply"), filed Aug. 7, 2020, at 8 (ECF No. 44); Respondent's Pre-Hearing Memorandum ("Resp. Br."), filed July 20, 2020, at 10 (ECF No. 43). The undersigned granted the parties' request, and a fact hearing was held on August 13, 2020.

## I. PROCEDURAL HISTORY

In the petition filed on June 11, 2018, petitioner asserted that he received a flu vaccination on October 2, 2015, and in the following weeks began to lose strength and feeling in his hands. Petition at ¶¶ 1, 4. Petitioner filed medical records in June and July 2018. Pet. Exhibits ("Exs.") 1-12. On March 14, 2019, petitioner filed additional medical records. Pet. Ex. 13. Respondent subsequently filed his Rule 4(c) Report arguing the onset of petitioner's symptoms are unclear and he is not entitled to compensation. Resp. Report ("Rept.") at 10 (ECF No. 19).

On August 13, 2019, petitioner filed an expert report and accompanying medical literature. Pet. Exs. 15-36. The case was then reassigned to the undersigned on October 1, 2019. Order Reassigning Case dated Oct. 1, 2019 (ECF No. 24). Respondent filed his responsive expert report and medical literature on January 24, 2020. Resp. Exs. A-B.

Following a status conference held on February 13, 2020, the parties were ordered to file a status report updating the Court regarding their settlement discussions. Order dated Feb. 14, 2020 (ECF No. 31). The parties' settlement negotiations were unsuccessful. Petitioner filed a joint status report on May 28, 2020, stating that respondent was not interested in settlement at this time and the parties requested a status conference. Joint Status Rept., filed May 28, 2020 (ECF No. 37). A status conference was held on June 4, 2020, during which the parties requested a fact hearing to address the onset of petitioner's alleged injuries. Order dated June 4, 2020 (ECF No. 38).

A videoconference fact hearing occurred before the undersigned on August 13, 2020. The issue is ripe for adjudication.

## II. ABREVIATED MEDICAL HISTORY

Petitioner was forty-four years old when he received the flu vaccine on October 2, 2015. Pet. Ex. 1 at 1. Prior to receipt of his flu vaccination, petitioner had long standing diabetes mellitus ("DM" or "diabetes") with complications. Pet. Ex. 2 at 151. On August 24, 2015, in a routine follow up for his DM, petitioner's primary care provider, Dr. Michael Badger, documented that petitioner had blurred vision, foot paresthesias, polydipsia, and visual changes. Id. at 162. A foot examination revealed that petitioner had abnormal sensation in both feet. Id. at 163. Petitioner's blood sugar on that date was 416, and his A1C was 13.0. Id. at 169. On October 2, 2015, petitioner received the flu vaccination at issue. Pet. Ex. 1 at 1.

On March 8, 2016, petitioner presented to Dr. Badger with bilateral leg weakness. Pet. Ex. 2 at 184. His symptoms were noted to be recurring. Id. at 196. Petitioner reported that this episode had started one-to-four weeks earlier, with gradual worsening. Id. Petitioner was unable to bear weight, had limited range of motion and stiffness, and numbness and tingling. Id. Petitioner reported that in mid-December, after a twelve-hour car ride, he had experienced lower extremity weakness and difficulty walking. Id. at 193. Petitioner did not complain of any symptoms of hand weakness, lack of manual dexterity, or numbness of his hands. Physical examination revealed decreased sensation in his feet, and decreased strength in his legs and feet. Id. at 194. Petitioner's legs buckled when he attempted to walk. Id. He had possible foot drop. Id. Deep tendon reflexes were 2/4 overall. Id. Dr. Badger diagnosed petitioner with leg weakness and uncontrolled diabetes, and ordered an MRI. Id. at 195.

An MRI was performed on March 17, 2016. Pet. Ex. 2 at 201. It showed multilevel lumbar spondylosis and disc abnormalities including a disc extrusion at L4-L5 with mass effect on the descending right L5 nerve root; right paracentral protrusion at L5-S1 with mass effect on the descending right S1 nerve root; and moderate to severe stenosis at L5-S1. Id.

On April 4, 2016, petitioner returned to his physician's office and saw Dr. Badger. Pet. Ex. 2 at 221. He complained of increased sciatic symptoms, leg weakness, extremity pain, and frequent falls. Id. at 223. Dr. Badger prescribed physical therapy, which petitioner declined. Id. at 224, 248-49.

Petitioner presented to neurologist, Dr. John Morris, on April 14, 2016. Pet. Ex. 3 at 1. He reported that approximately one month earlier, he noticed that he was tripping over carpet and having trouble lifting his feet off the floor. Id. He had leg pain and balance problems. Id. Petitioner also complained of an episode of urinary and bowel incontinence. Id. at 2. Petitioner explained that he had decreased sensation below his knees for several months, and difficulty recognizing where his feet were on the ground since December and/or January. Id. He reported increasing problems over the past several months with weakness of his hands. Id.

Physical examination revealed decreased strength in abduction minimi at 2/5, tibialis anterior at 2/4; lower leg muscles were 3-4/5; and, other muscles had normal strength with 5/5. Pet. Ex. 3 at 2. Deep tendon reflexes were absent in all extremities. Id. at 4. Petitioner had decreased sensation below the ankles, foot drop, and was using a walker for ambulation. Id. Dr. Morris suspected CIDP or ALS, "partially clouded by diabetic neuropathy." Id. at 6. An EMG performed on April 18, 2016, was consistent with a severe generalized peripheral neuropathy with mixed axonal features. Id. at 24.

On April 18, 2016, petitioner was admitted to Forsyth Medical Center. Pet. Ex. 5 at 2. His history on admission was significant for a progressive six-month history of bilateral foot drop. Id. at 14. Petitioner also recounted that he had trouble walking in December 2015 after a 12-hour car ride. Id. at 15. He continued to have balance issues from December 2015 to February 2016. Id. In March and April 2016, petitioner experienced a further decline in his condition. Petitioner had decreasing hand strength over several months, problems with dexterity, and decreased muscle mass in his hands. Id. He also reported that he began to use a walker after falling several times over the last month. Id. at 27. Petitioner reported urinary incontinence. Id.

A lumbar puncture showed elevated proteins. Id. at 19. Physical examination showed that petitioner's arm strength was 5/5. Id. at 21. However, he had abnormal distal and proximal sensation in all of his extremities. Id. He was diagnosed with CIDP and a five-day course of IVIG was prescribed. Id. at 15, 30, 60.

## III. HEARING TESTIMONY

During the hearing on August 13, 2020, petitioner, petitioner's wife, Mrs. C., and petitioner's long-time friend, Mr. Rapp, provided sworn testimony. Petitioner stated he first noticed symptoms of hand weakness the week leading up to Halloween. Transcript ("Tr.") 8. Petitioner, a nurse, noticed he could not open pill packages at work. Tr. 9. On Thanksgiving, in November 2015, petitioner recalled looking down at his hands and noticing they seemed old. Tr. 10. Petitioner noted his symptoms began to progress in December 2015. Tr. 12. After a ten-hour drive on December 18, 2015, petitioner was unable to stand up straight and needed support to hold himself up. Tr. 13. He began having issues walking and in February 2016, and he could not pick up his right foot. Tr. 17. Petitioner testified that after numerous falls and an episode of urinary incontinence he finally got an appointment with a neurologist in April 2016 and was diagnosed with CIDP. Tr. 20.

Ms. C. testified she first noticed her husband's symptoms in late October 2015. Tr. 109. Ms. C. noticed petitioner had trouble holding drinks and would ask her to open water bottles for him. Tr. 108-09. Ms. C. then stated her husband became weak and had trouble walking. Tr. 109. She remembered him complaining that he could not hold his head up. Id. When asked why her husband did not see a doctor sooner for his worsening symptoms, Ms. C. attributed the delay in seeking medical care to her husband's stubbornness. Id. She said this attitude changed when petitioner had an episode of incontinence and became scared. Tr. 110.

Mr. Rapp also testified he noticed petitioner began to have trouble opening drinks in late October and in early November 2015. Tr. 133. Mr. Rapp stated that petitioner was later unable to clear a step in Mr. Rapp's garage that he previously had no trouble with. Id. In December, Mr. Rapp recalled witnessing petitioner falling and asking Ms. C. what was going on with petitioner. Tr. 134.

## IV. PARTIES' CONTENTIONS

Petitioner asserts that his symptoms began on or about October 31, 2015, 29 days after his October 2, 2015 flu vaccination. Pet. Reply at 11. In his affidavit, petitioner alleges that he first noticed manual dexterity and hand weakness around Halloween, October 31, 2015. Pet. Ex. 38 at ¶ 3; Tr. 8; see also Pet. Reply at 8. Petitioner stated he could not grasp the candy packages to put them in a bowl and they ended up all over the floor. Pet. Ex. 38 at ¶ 3. Petitioner asserted that in November of 2015 he was unable to open pill packages at work, and also noticed how his hands "were atrophied and looked much older." Id. at ¶¶ 4-5. Petitioner recalled his symptoms and weakness getting progressively worse as time went by.

Respondent disagrees and asserts that petitioner's symptoms of CIDP began at the earliest in mid-December 2015, nine to ten weeks after vaccination. Resp. Br. at 10. Further,

respondent contends that even if petitioner can establish that he suffered hand weakness and diminished sensation in October of 2015, expert opinion will be required to determine the significance of these symptoms and whether they were the first manifestation of CIDP. Id.

## V. DISCUSSION

### A. Applicable Legal Standard

A petitioner must prove, by a preponderance of the evidence, the factual circumstances surrounding her claim. § 13(a)(1)(A). To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. See Burns v. Sec'y of Health & Hum. Servs., 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). Contemporaneous medical records are presumed to be accurate. See Cucuras v. Sec'y of Health & Hum. Servs., 993 F.2d 1525, 1528 (Fed. Cir. 1993). To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." Sanchez v. Sec'y of Health & Hum. Servs., No. 11-0685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing Blustein v. Sec'y of Health & Hum. Servs., No. 90-2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

### B. Evaluation of the Evidence

The undersigned finds petitioner to be generally credible, particularly with regard to the chronology of events following his flu vaccination as well as the events that occurred on or about October 31, 2015 and forward. As for the other two witnesses, Mrs. C. and Mr. Rapp, the undersigned found their testimony somewhat inconsistent with regard to dates and events and their memories and testimony less reliable.

With regard to onset, the undersigned finds that based on Dr. Badger's medical records, petitioner had blurred vision, foot paresthesias, polydipsia, and visual changes on August 24, 2015. Pet. Ex. 2 at 162. Further, a foot examination showed that petitioner had abnormal sensation in both feet. Id. at 163. Petitioner's blood sugar on that date was 416, and his A1C was 13.0. Id. at 169.

The undersigned further finds that petitioner's affidavit and his testimony given at the hearing on August 13, 2020, generally describe his clinical course. The petitioner's testimony should be read in concert with the records from his healthcare providers which describe his clinical course. Because this case does not involve an acute illness but a more progressive one, and due to the subtle symptoms which occurred over time as described by petitioner, the undersigned finds that it would be inappropriate to describe or identify any specific onset of symptoms, other than those noted above on August 24, 2015. As it relates to causation, instead of trying to determine a discrete date of onset of any particular symptom, due to the progressive nature of petitioner's illness, it may be more relevant for the experts to determine the significance of the progressive changes in petitioner's symptoms over the period of time from August 2015 until April 2016, when he was diagnosed with CIDP. Thus, the undersigned makes

no ruling on onset other than that described above, describing the symptoms petitioner had on August 24, 2015.

The parties are instructed to provide this Ruling, and the testimony and affidavit of petitioner to their experts. The experts may provide supplemental reports after reviewing the testimony.

## VI. CONCLUSION

The undersigned finds, based on the medical records, that petitioner had blurred vision, foot paresthesias, polydipsia, visual changes, and abnormal sensation in both feet on August 24, 2015, prior to the administration of the vaccination at issue. Other than these findings, the undersigned makes no other ruling as to the onset of any particular symptom(s) or condition. The records and testimony suggest that petitioner had a progressive clinical course, and expert opinion is necessary to address the onset and significance of any particular symptom or constellation of symptoms.

Petitioner shall file a status report indicating whether he wishes to dismiss his case or proceed with obtaining expert opinions that take into account this fact ruling **by Thursday, October 29, 2020.**

**IT IS SO ORDERED.**

**s/Nora Beth Dorsey**
Nora Beth Dorsey
Special Master